UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.     23-30045 |
| ACJK, Inc., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| ACJK, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.     25-03011 |
| | ) | |
| OptumRX, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| In Re | ) | |
| | ) | Case No.     23-30045 |
| ACJK, Inc., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| ACJK, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.     25-03012 |
| | ) | |
| Express Scripts, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court are motions to dismiss filed by the defendants in two separate adversary proceedings commenced by the debtor in the same underlying bankruptcy case. The motions seek dismissal of the claims against the defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim. For the reasons set forth herein, the motions to dismiss will be granted in part and denied in part.

## I.      Factual Background

ACJK, Inc. ("Debtor"), a corporation that operated a pharmacy in Granite City, Illinois, commenced its voluntary Chapter 11 case on January 30, 2023, by filing a bare-bones petition. The Debtor's schedules and other required documents were filed a month later. On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed Express Scripts, Inc., OptumRX, Inc., and others as holders of claims in unknown amounts secured by the pharmacy's accounts receivable valued at $228,800. The debts were marked by the Debtor as being "disputed." Among the assets listed on Schedule A/B, the Debtor identified potential causes of action for breach of contract and misrepresentation against OptumRX, Express Scripts, and others of unknown values. On its Statement of Financial Affairs, the Debtor identified OptumRX and Express Scripts as recipients of prepetition transfers in unknown amounts described as "offset DIR fees from Debtor's accounts receivable." OptumRX and Express Scripts were similarly identified as having set off debts owed to them by taking unknown amounts from the Debtor's financial account without permission. Neither entity filed a proof of claim in the case. But several other creditors filed claims, including on account of unsecured prepetition debts.

The Debtor's Second Amended Chapter 11 Plan was confirmed on March 5, 2024. The plan defined "DIR Fees" as "pharmaceutical-related expenses

deducted from Debtor's gross sale proceeds by Pharmacy Benefit Mangers [sic] (PBM's) [sic], including" OptumRX and Express Scripts. The plan was to be implemented in part through a litigation fund comprised of proceeds that might be obtained in pursuing prepetition causes of action for the benefit of creditors against the PBMs in relation to DIR Fees collected.

On January 29, 2025, the Debtor commenced an adversary proceeding against OptumRX, Express Scripts, and several other entities asserting causes of action against each for unauthorized postpetition transfers and constructively fraudulent prepetition transfers under federal and state law based on DIR Fees deducted from the Debtor's accounts receivable in the months and years surrounding the petition date.[1] In an order entered February 13, 2025, the Judge previously assigned to the proceeding found that, among other deficiencies, the complaint impermissibly joined defendants in the same cause of action for what appeared to be separate and distinct transactions or occurrences and directed the Debtor to file separate adversary complaints against each defendant within 21 days. After an initial motion to reconsider was denied, the Debtor filed another document labeled as a motion to reconsider or for clarification, asserting that it had a right to file an amended complaint as a matter of course through which it hoped to cure any issues. Consistent with that position, the Debtor filed a first amended complaint which asserted essentially the same causes of action against the same defendants. Several named defendants objected and asked the Court

---

[1] The complaint identified OptumRX as "United Health Group d/b/a OptumRX, Inc. f/k/a Catamaran, Inc." The Motion to Dismiss in adversary case no. 25-03011 was filed on behalf of OptumRX.

to strike the amended complaint. Rather than strike the amended complaint, at a hearing held on May 22, 2025, the Court ordered that the claims be severed so that there would be separate adversary proceedings against each defendant and further ordered the Debtor's attorney to pay the filing fee for each of the severed cases. The filing fees were paid, and the result was separate proceedings against each defendant all based on the same first amended complaint.

Relevant to the present proceedings, Count I of the first amended complaint alleges that OptumRX and Express Scripts deducted DIR Fees in unknown amounts from the Debtor's accounts receivable after the petition date of January 30, 2023. Because the Debtor ceased operations on January 21, 2023, the Debtor alleges that such deductions must have been on account of prepetition claims and are therefore avoidable under §549(a). Count I further seeks an accounting and recovery of amounts avoided under §§542(a) and 550(a).

Counts VI and VII seek to avoid constructively fraudulent transfers to Express Scripts under §548(a)(1)(B) and 740 ILCS 160/5, respectively. Count VI alleges that, between January 31, 2021, and January 30, 2023, Express Scripts "offset approximately $103,142.84 in DIR FEEs from [the Debtor's] Accounts Receivable" for obligations incurred by the Debtor within that period. The Debtor alleges that it received less than a reasonably equivalent value in exchange for the "excessive" DIR Fees collected and that it was insolvent at the time or made insolvent thereby. Count VI further alleges that Express Scripts was an insider of the Debtor as defined in the Bankruptcy Code. Count VII, in turn, alleges that

Express Scripts "offset approximately $136,362.47 in DIR FEES from [the Debtor's] Accounts Receivable" between January 31, 2019, and January 30, 2023, on account of obligations incurred by the Debtor over the same period. The Debtor alleges it received less than a reasonably equivalent value for the described transfers and that the Debtor was "insolvent on the date the [allegedly fraudulent] transfers were made and/or incurred or became insolvent as a result of such transfers."

Counts XII and XIII similarly seek to avoid constructively fraudulent transfers to OptumRX under §548(a)(1)(B) and 740 ILCS 160/5, respectively. They make the same allegations against OptumRX that are set forth in Counts VI and VII against Express Scripts, differing only in the amounts of the alleged transfers. In that regard, Count XII alleges that OptumRX "offset approximately $196,692.18 in DIR FEEs" in the two-year period ending on the petition date, and Count XIII alleges that OptumRX "offset approximately $332,570.05 in DIR FEES" in the four years preceding the bankruptcy.

Although OptumRX and Express Scripts are represented by different attorneys, each filed substantially identical Motions to Dismiss ACJK, Inc.'s First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim and related supporting briefs (collectively "Motions to Dismiss") in the respective proceeding against them.

On September 25, 2025, the above-captioned proceedings, along with the other severed actions based on the same amended complaint, were reassigned to the undersigned Judge. A hearing was set for status on pending matters in

each proceeding. In the meantime, the Debtor filed responses in opposition to the Motions to Dismiss in the present proceedings. At the status hearing held October 23, 2025, the Court stated it would take the Motions to Dismiss under advisement. That same day, the Debtor filed in the bankruptcy case a motion to modify its confirmed plan to add a provision in response to arguments made in the Motions to Dismiss filed here regarding whether the Debtor had adequately reserved authority to pursue certain causes of action asserted against OptumRX and Express Scripts.

The Defendants filed a joint objection to the motion to modify plan and, after hearing and additional briefing on the issues raised by the motion to modify, the Court took the matter under advisement. Based on the adversary parties' agreement that the motion to modify could be consequential to the adversary litigation, orders were separately entered in each of the adversary proceedings putting the Motions to Dismiss on hold pending resolution of the motion to modify in the bankruptcy case.

The motion to modify was ultimately denied by order entered March 25, 2026. The denial was based primarily on the Debtor's stipulation that distributions had begun under the confirmed plan, and, as such, the plan had been substantially consummated and could not be modified. The concluding paragraph of the order noted that the Motions to Dismiss had been put on hold pending decision on the motion to modify and would be taken under advisement once again.

The Court has reviewed and considered the parties' arguments along with the entire case record in each proceeding. The Motions to Dismiss are ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate, proceedings to determine, avoid, or recover fraudulent conveyances, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (H), (O).

While statutorily core, there is some disagreement about whether fraudulent conveyance actions are constitutionally core in the wake of the Supreme Court's decisions in *Stern v. Marshall*, 564 U.S. 462, 493 (2011), and *Executive Benefits Insurance Agency v. Arkinson*, 573 U.S. 25, 37-38 (2014). *Compare Maxwell v. United States (In re Horizon Grp. Mgmt., LLC),* 617 B.R. 581, 585 (Bankr. N.D. Ill. 2020) (finding fraudulent transfer action under §548 constitutionally core), *with Brandt v. FDIC (In re Equip. Acquisition Res., Inc.),* 560 B.R. 501, 504 (Bankr. N.D. Ill. 2016) (finding that state-law fraudulent transfer claims as well as §548 claims are not constitutionally core). But the prevailing opinion in this Circuit is that avoidance of fraudulent transfers under §548 are

constitutionally core. In any event, the first amended complaint also asserts state-law fraudulent conveyance causes of action against each Defendant which do not arise exclusively under the Bankruptcy Code and do not strictly arise in a bankruptcy case, and this Court is therefore exercising "related to" jurisdiction in these proceedings. Absent consent of the parties, the Court's authority to enter final judgment on at least the state-law fraudulent conveyance actions is limited. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015); *Exec. Benefits*, 573 U.S. at 37-38; *Stern*, 564 U.S. at 493; 28 U.S.C. §157(c).

Here, the Defendants have not consented to entry of final orders on the merits of the claims asserted against them. Even so, this Court has authority to enter orders on preliminary matters to the extent they do not constitute a final adjudication on the merits of underlying causes of action over which the Court does not have constitutional authority to enter a final order. *See Lordstown Motors Corp. v. Hon Hai Precision Indus. Co. (In re Nu Ride Inc.),* 666 B.R. 510, 512 (Bankr. D. Del. 2024). The authority to enter orders on such preliminary matters generally includes orders resolving motions to dismiss. *Id.*; *Settlers' Hous. Serv., Inc. v. Schaumburg Bank & Trust Co. (In re Settlers' Hous. Serv., Inc.),* 514 B.R. 258, 268-69 (Bankr. N.D. Ill. 2014) (bankruptcy court has authority to deny motion to dismiss because such denial does not result in entry of judgment; and, while an order of dismissal may be a final judgment, if order adjudicates fewer than all claims or rights of all parties then it is not a final judgment). Because the orders entered in connection with these adversary proceedings will

grant dismissal only in part, they will adjudicate fewer than all claims or rights of the parties and are therefore not final judgments.

### III.   Legal Analysis

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint need only allege enough factual allegations to plausibly suggest a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. That is, a complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). *Twombly* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While detailed specifics may not be required, there must be some facts alleged to support each element of the cause of action. *Id.* at 678-79; *see also Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098-99 (7th Cir. 2015).

"A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599,

602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Iqbal*, 556 U.S. at 678; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). Those well-pleaded facts, however, must "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679.

### A. The Undeveloped Factual Record Prevents the Court from Concluding that the Transactions at Issue are Unavoidable Setoffs or Recoupment.

The Motions to Dismiss make three main arguments in support of dismissal. The first argument focuses on the nature of the transactions as setoffs or recoupment. Pointing to the Debtor's repeated use of the term "offset" to describe the alleged transfers, the Defendants argue that Counts I, VI/XII, and VII/XIII must be dismissed because a setoff is not a transfer as defined in the Bankruptcy Code and therefore not avoidable under §§544, 548, or 549. The Defendants go one step further, contending that the alleged "offsets" are actually in the nature of recoupment and, in addition to not being subject to avoidance, are not subject to the automatic stay.

The Defendants rely primarily on *Matter of Prescott*, 805 F.2d 719, 730-31 (7th Cir. 1986), in which case the Seventh Circuit described the history around setoffs and their exclusion from the bankruptcy legislation definition of a "transfer," setting up its holding that a setoff is not avoidable as a preference except as provided in §553. Although *Prescott* and the legislative history upon

which it relied both addressed whether a setoff is a transfer in the context of a preference under §547, "there is little reason to believe that Congress intended a different understanding of transfer to apply in the fraudulent conveyance context." 5 COLLIER ON BANKRUPTCY ¶553.09 n.8 (16th ed. 2026).

Although related concepts, recoupment and setoff differ in that recoupment requires the countervailing claims to arise from the same transaction, typically resulting in some type of "overpayment." *Raleigh v. Mid Am. Nat. Bank & Trust Co. (In re Stoecker),* 131 B.R. 979, 982-83 (Bankr. N.D. Ill. 1991). Further, unlike setoff, "recoupment is not subject to the automatic stay of §362" and therefore could preclude a potential argument for avoidance under §549 based on a theory that an unauthorized postpetition setoff is a transfer. *Warsco v. Household Bank,* 272 B.R. 246, 253 (Bankr. N.D. Ind. 2002), *aff'd sub nom., Kleven v. Household Bank,* 334 F.3d 638 (7th Cir. 2003). And because it is different from setoff, recoupment would also not be subject to the provisions of §553 governing avoidance of setoffs. *Id.*

The Defendants further cite bankruptcy decisions outside the Seventh Circuit in support of their broader contention that "recoupments simply are not subject to the avoidance powers under Chapter 5 of the Bankruptcy Code[,]" but the reasoning of those decisions is premised on the nature of recoupment as merely a defense to liability by way of reducing the defendant's obligation, the burden of which rests with the party asserting the defense to establish. *See Mercy Hosp. of Watertown v. New York State Dep't of Soc. Servs.,* 171 B.R. 490, 495-96 (N.D.N.Y. 1994); *Visiting Nurse Ass'n of Tampa Bay, Inc. v. Sullivan*

-11-

*(Matter of Visiting Nurse Ass'n of Tampa Bay, Inc.),* 121 B.R. 114, 121 (Bankr. M.D. Fla. 1990); *see also Rainsdon v. Davisco Foods Int'l, Inc. (In re Azevedo),* 497 B.R. 590, 598 (Bankr. D. Idaho 2013) ("even if recoupment is available, [defendant] must show" requirements of defense are satisfied); *Jobin v. Ripley (In re M & L Bus. Mach. Co.),* 198 B.R. 800, 811 (D. Colo. 1996) (party asserting defense must prove entitlement). In other words, whether and to what extent recoupment is a defense to an avoidance claim is a factual inquiry. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 654 B.R. 224, 236 (Bankr. S.D.N.Y. 2023) (quoting *In re Malinowski,* 156 F.3d 131, 135 (2d Cir. 1998)) (because defense of recoupment is equitable in nature, "the facts in the particular case are important"); *Mercy Hosp. of Watertown,* 171 B.R. at 496 (factual inquiry necessary to determine whether transaction is in nature of recoupment).

Turning then to the Debtor's amended complaint here, it is not clear that the transactions complained of are in the nature of setoff or recoupment as the Defendants contend. Their argument is based on the Debtor's use of the term "offsets" to describe the transactions upon which the avoidance claims are founded. But terminology notwithstanding, the allegations of the amended complaint describe a varied process by which transactions between the parties were settled at different times. Among them, the Debtor does allege that net claim reimbursement proceeds were routinely deposited into the Debtor's account after deducting DIR Fees owed to the Defendants, suggestive of setoff or recoupment. But the allegations also describe a process by which the Defendants would pay the reimbursement proceeds in full to the Debtor's account with Cardinal and

Cardinal would thereafter pay the Defendants' claims for DIR Fees from the account. For instance, the amended complaint alleges that reimbursement proceeds from all PBMs were deposited into the same account with Cardinal where they "were comingled before any DIR FEES were deducted therefrom" and that "Cardinal processed each of the PBM's DIR FEE claims and collectively offset them against the aggregate proceeds of [the Debtor's] Accounts Receivable." Indeed, the Debtor's response to the Motions to Dismiss contends that "the reality is that the transfers at issue in this case are not offsets but rather payments of DIR fees from [the Debtor's] property to the [Defendants]."

Inartful as they are, the allegations of the amended complaint provide enough to give the Defendants notice of the grounds for the Debtor's avoidance claims and to withstand, at least for now, the Defendants' assertion that the transactions at issue are not subject to avoidance as setoffs or recoupment. If true, the Debtor's allegations of Cardinal affirmatively paying the Defendants for DIR Fees owed to them could be sufficient to dispose of any argument of setoff or recoupment. But the Court cannot make that determination on the record before it; the nature of the transactions at issue is a disputed fact for which further development of the factual record is needed. Further, in terms of recoupment specifically, the Debtor's allegation that Cardinal would indiscriminately settle claims by PBMs for DIR Fees from the commingled pot of aggregate proceeds received from all PBMs creates a dispute of fact as to whether the "same transaction" requirement for recoupment exists. The Defendants may ultimately prevail defending against the Debtor's avoidance actions if the facts

in the record establish that the transactions at issue were setoffs or recoupment. But on the undeveloped record at this stage of the proceedings, the Defendants' assertions of setoff and recoupment are not a basis for dismissing the Debtor's avoidance claims.

### B. The Debtor's Confirmed Plan Failed to Preserve Postpetition Causes of Action for Postconfirmation Prosecution by the Debtor.

The Defendants' second argument for dismissal focuses on Count I and its request for relief under §542. Their argument is twofold.  They contend that, due to the postconfirmation status of the case and the Debtor's failure to preserve any claims under §542 through the confirmed plan, the bankruptcy estate and the Debtor's ability to assert such claims have been extinguished. And even if the Debtor could assert the claim, the Defendants argue that §542(a) does not provide a basis for recovery of postpetition transfers. In its response, the Debtor counters that the provisions of its confirmed plan did preserve the claims asserted against the Defendants but does not address whether §542(a) even provides a basis for relief.

Count I of the amended complaint seeks relief under §542 as well as §§549 and 550, all based on postpetition transactions and occurrences. Such relief is generally reserved for the trustee to pursue. 11 U.S.C. §§542, 549, 550. But in Chapter 11 cases where, as here, no trustee is appointed, the debtor acts as a debtor-in-possession with generally all the rights and duties of a trustee. *See* 11 U.S.C. §§1101, 1107(a). Among such rights is the exercise of the trustee's authority under the turnover and avoidance provisions of Chapter 5 of the Code.

*LB Steel, LLC v. Walsh Const. Co. (In re LB Steel, LLC),* 572 B.R. 690, 705 (Bankr. N.D. Ill. 2017). But absent plan provisions to the contrary, those powers generally disappear along with a debtor's status as debtor-in-possession upon confirmation of a Chapter 11 plan. *Red Barn Motors, Inc. v. Louisiana's First Choice Auto Auction, LLC,* 2015 WL 9701040, at *3 (S.D. Ind. Dec. 11, 2015).

Section 1123(b)(3)(B) allows for Chapter 11 plans to provide for the "retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any . . . claim or interest" belonging to the debtor or the estate. 11 U.S.C. §1123(b)(3)(B). Courts have adopted a standard for determining whether a claim is adequately retained by a Chapter 11 plan, requiring that the plan include retention language that is "specific and unequivocal" but disagreeing about how to apply the standard. *See, e.g., In re Futter Lumber Corp.,* 473 B.R. 20, 30-31 (E.D.N.Y. 2012) (collecting and categorizing cases into three approaches). The Seventh Circuit has commented on the "specific and unequivocal" standard, noting that the statute itself importantly "contains no such requirement." *Matter of P.A. Bergner & Co.,* 140 F.3d 1111, 1117 (7th Cir. 1998). Although it did not disavow the standard, the court in *P.A. Bergner* opted against a literal interpretation of the phrase. *Id.* Instead, the Seventh Circuit looked to the circumstances underlying decisions applying the standard and concluded that a plan should unequivocally retain claims of a given type but need not specifically identify individual claims. *Id.*

Since *P.A. Bergner*, courts in the Seventh Circuit have varied in their determination of whether the language of a particular plan was sufficient to

retain claims postconfirmation. Among the decisions, that in *KHI Liquidation Trust v. Wisenbaker Builder Servs., Ltd. (In re Kimball Hill, Inc.),* 449 B.R. 767 (Bankr. N.D. Ill. 2011), stands out as a thorough and well-reasoned synthesis of the issue. Picking up where *P.A. Bergner* left off, the court in *Kimball Hill* explored the bounds of what plan language would suffice to retain a claim for prosecution after confirmation. Noting *P.A. Bergner*'s favorable citation to *In re Acequia, Inc.*, 34 F.3d 800, 807-08 (9th Cir. 1994)—which dealt with decidedly broad plan language—and the pitfalls of requiring exacting specificity which would only delay confirmation and could still lead to detrimental consequences to the estate for even the slightest inaccuracy, the court in *Kimball Hill* concluded that broad, categorical retention language is adequate as long as it is clear in what it reserves. *Kimball Hill,* 449 B.R. at 774-78.

Turning to the Debtor's confirmed plan here, Section IV.A provides for the liquidation of assets comprised in part of "pre-petition Causes of Action against . . . the PBM's [sic]." Section IV.B provides for the creation of a "Litigation Fund" into which proceeds from litigation and settlement of "Causes of Action" are to be deposited and distributed for the benefit of creditors according to the procedures set forth. The plan does not define "Causes of Action," but the definitions for other terms are helpful. The plan defines "Litigation Proceeds" as including money collected from litigation or settlement of causes of action against persons or entities that collected DIR Fees. "DIR Fees" are defined as "pharmaceutical-related expenses deducted from Debtor's gross sale proceeds by Pharmacy Benefit Mangers [sic] (PBM's) [sic]," naming the Defendants as

being among such PBMs. "Litigation Fund" is defined as "the fund established pursuant to Section IV.B of the Plan[,]" which section makes reference to the Debtor having "pre-petition causes of action against . . . the PBM's [sic], as more fully described in the Disclosure Statement."

The Second Amended Disclosure Statement identifies "pre-petition Causes of Action" falling into three categories: two involving non-PBM entities and thus not relevant here, and a third category described as "causes of action against the PBM's [sic] for unfair and deceptive practices involving the collection of approximately $1,000,000 in DIR Fees from Debtor's accounts receivable in the five years preceding the Petition Date." Consistent with the plan, the disclosure statement calls for the establishment of a "Litigation Fund" into which any "proceeds attributable to Debtor's causes of action shall be paid" for purposes of implementing and funding the plan. The final paragraph of the disclosure statement provides as follows:

> D. Retention of Causes of Action and Jurisdiction. All rights and causes of action held by the Debtor prior to confirmation shall be retained by Debtor, as Debtor-in-Possession and successor in interest, regardless of whether such rights or causes of action came into being pre-petition or post-petition. The Bankruptcy Court will retain jurisdiction over matters related to the Plan to the full extent available by law.

Although neither the plan nor disclosure statement describes avoidance or other Code-based causes of action to be pursued by the Debtor—indeed the disclosure statement describes the causes of action as unfair and deceptive practice claims—they do identify the basic transactions and occurrences upon which the claims are based and the entities against whom the claims are to be

-17-

made. Adopting the reasoning of the *Kimball Hill* decision, this Court finds that the plan and disclosure statement language is enough to make clear the Debtor's intention to pursue the Defendants regarding the prepetition collection of DIR Fees. Indeed, even under a narrower interpretation of "specific and unequivocal" followed in some jurisdictions outside Seventh Circuit, naming the prospective defendant and stating the factual basis for claims would be enough to preserve them for postconfirmation prosecution. *Kimball Hill,* 449 B.R. at 774 (citing *Browning v. Levy,* 283 F.3d 761, 775 (6th Cir. 2002) (noting significance, in deeming blanket reservation ineffective, that the plan "neither names [the defendant] nor states the factual basis for the reserved claims")).

But the plan and disclosure statement language at issue here is clearly limited to causes of action based on prepetition events and claims. In specifying its intention to pursue prepetition causes of action it might have against the Defendants and their collection of DIR Fees, the Debtor defined the category of claims to be preserved such that those claims falling into the category were successfully retained to the exclusion of all others. Chapter 11 plans are essentially contracts which should be interpreted to give effect to all terms according to their ordinary and natural meaning. *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.),* 310 B.R. 107, 125 (Bankr. N.D. Ill. 2004) (citations omitted). The only reasonable interpretation of the plan's reference to prepetition causes of action here is that it did not apply to postpetition causes of action. The Defendants are therefore correct that the plan failed to preserve the postpetition claims in Count I for turnover and accounting under §542. And, although not

argued by the Defendants, the same reasoning extends to the Debtor's other claims in Count I for avoidance and recovery of postpetition transfers under §§549 and 550.

To be sure, the disclosure statement does contain a broad retention provision in its final paragraph, which warrants a brief discussion even if the Debtor failed to mention it. It provides that "[a]ll rights and causes of action held by the Debtor prior to confirmation shall be retained by Debtor, as Debtor-in-Possession and successor in interest, regardless of whether such rights or causes of action came into being pre-petition or post-petition." While a natural reading of the provision would include the causes of action asserted in Count I of the amended complaint, courts have widely concluded that similar provisions alone are ineffective for purposes of §1123(b)(3)(B). *See, e.g., D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York,* 112 F.3d 257, 261 (7th Cir. 1997) ("blanket reservation that seeks to reserve all causes of action reserves nothing"); *Red Barn Motors,* 2015 WL 9701040, at *3 (recognizing authorities holding blanket reservation ineffective but concluding broad retention provision at issue saved by other provisions specifically naming causes of action and defendants); *Kmart,* 310 B.R. at 123-24 ("open-ended statement that the debtor reserves actions it may choose to institute leaves creditors in the dark about whether post-confirmation recoveries will in fact be retained for potential enforcement"). The final paragraph in the disclosure statement here purports to reserve everything and therefore reserves nothing. To the extent the retention provision is saved by other provisions in the disclosure statement and plan, it is only to the extent of

the effectiveness of those other provisions, which the Court has already explained is limited to prepetition causes of action. The retention provision in the disclosure statement adds nothing to alter the outcome here.

Count I relates exclusively to postpetition claims which the Debtor's confirmed plan failed to preserve for postconfirmation pursuit by the Debtor. Count I must therefore be dismissed in its entirety in each proceeding. And, because the problems with Count I could not be cured through amendment, the dismissal is with prejudice.

### C. Neither § 160/5(a) of the Illinois Uniform Fraudulent Transfer Act Nor §544(b) of the Bankruptcy Code Requires the Debtor to Identify the Creditor in Whose Shoes it Stands for Pleading Purposes.

The Defendants' final argument for dismissal relates to Count VII against Express Scripts and Count XIII against OptumRX, both brought under 740 ILCS 160/5 of the Illinois Uniform Fraudulent Transfer Act ("IUFTA") and grounded in §544(b) of the Bankruptcy Code.[2] According to the Defendants, Counts VII and XIII must be dismissed because the Debtor failed to allege the existence of a creditor against whom the transfer is voidable. Although the Debtor's response acknowledges the argument, it does not actually contest the Defendants' assertions.

---

[2] Although Counts VII and XIII reference §541(a), §544(b) provides the authority for a trustee to step into the shoes of a creditor to avoid a transfer under nonbankruptcy law for the benefit of all creditors. It is apparent that this is the avenue through which relief is being sought, and the Debtor's failure to cite §544 as the basis for the claim asserted does not prevent the Court from construing it as such. *See King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (citations omitted).

The Defendants cite cases supporting the proposition that the plaintiff in a fraudulent transfer action rooted in §544(b) must establish the existence of a qualifying creditor to obtain relief—a generally uncontroversial point. *See, e.g., Karnes v. McDowell (In re McDowell),* 87 B.R. 554, 558 (Bankr. S.D. Ill. 1988). But more than that, the Defendants contend that the Debtor is further required to affirmatively allege the existence of a qualifying unsecured creditor, citing *Aluminum Mills Corp. v. Citicorp North America, Inc. (In re Aluminum Mills Corp.),* 132 B.R. 869, 889 (Bankr. N.D. Ill. 1991).

The Seventh Circuit has unequivocally stated, however, that a plaintiff need not articulate a specific creditor in whose shoes it is stepping for purposes of avoiding transfers under state law; it is sufficient if unsecured claims were filed by creditors, any one of whose position a trustee could assume. *Matter of Leonard,* 125 F.3d 543, 544 (7th Cir. 1997). The Seventh Circuit has reiterated the point several times. *See, e.g., In re Chicago Mgmt. Consulting Grp., Inc.,* 929 F.3d 803, 807, 811 (7th Cir. 2019) (affirming bankruptcy court determination that existence of IRS and credit card debt was sufficient to permit §544(b) and IUFTA action); *In re Image Worldwide, Ltd.,* 139 F.3d 574, 577 (7th Cir. 1998) (trustee need not identify creditor, so long as the unsecured creditor exists). Still, the Seventh Circuit precedent leaves open the question of whether the plaintiff, in bringing a claim rooted in §544(b), must plead the existence of a qualifying creditor, even if only in general terms.

There is post-*Leonard* precedent from within this Circuit requiring such pleading. In *Covey v. Webster (In re Webster),* 1999 WL 33582261, at *1 (Bankr.

C.D. Ill. Apr. 27, 1999) (Altenberger, J.), the court acknowledged the Seventh Circuit's conclusion that a plaintiff need not identify a creditor by name but ultimately dismissed the action due to the plaintiff's failure to allege that any creditor existed at the time of the transfer, noting that the amended complaint only needed to allege that a creditor existed. *Cf. Maxwell v. Michael (In re Horizon Grp. Mgmt., LLC),* 652 B.R. 764, 789-91 (Bankr. N.D. Ill. 2023) (questioning the scope and application of *Leonard,* noting that the decision does not affect the plaintiff's burden of proving the existence of a qualifying creditor, and stating that, "[a]t the very least, the court must be reasonably assured that such a creditor exists, even if the plaintiff need not specifically identify the creditor").

Importantly, those decisions have in common a distinguishing fact: none of the claims at issue involved §160/5 of the IUFTA under which the Debtor's claims here are brought. Both *Webster* and *Horizon Group Management* were decided in the context of 740 ILCS 160/6(a), which requires the existence of a creditor at the time of the transfer. Because it does not automatically follow that such creditor also held an allowable claim at the time the bankruptcy petition was filed for purposes of §544(b), it is understandable why courts would be inclined to require plaintiffs to affirmatively plead the existence of such creditor. Section 160/5, on the other hand, is not restricted to creditors existing at the time of the alleged fraudulent transfer but rather provides for avoidance of transfers as to any creditor, "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred[.]" 740 ILCS 160/5(a). As a practical matter then, for purposes of asserting a claim under 740 ILCS

160/5(a) in bankruptcy pursuant to §544(b), a plaintiff only need establish the existence of an unsecured creditor as of the bankruptcy petition date.

Similarly, *Aluminum Mills* and the other decisions cited by the Defendants requiring plaintiffs to specifically plead the existence of a creditor with a pending claim against the debtor at the time of the alleged fraudulent transfer "were decided prior to the enactment of (or were not governed by) section 160/5 of the [IUFTA]" and are therefore distinguishable. *Brandt v. KLC Fin., Inc. (In re Equip. Acquisition Res., Inc.),* 481 B.R. 422, 429-30 (Bankr. N.D. Ill. 2012). In drawing that distinction and explaining that it is not necessary for a plaintiff bringing an action under §160/5 of the IUFTA to identify a creditor with an existing claim at the time of the alleged fraudulent transfer, the court in *Equipment Acquisition Resources* simply took judicial notice of the "scores of unsecured claims filed in the record of [the] case" which it deemed adequate to establish the existence of a qualifying creditor. *Id.* at 430.

In the underlying bankruptcy case here, several unsecured claims were filed by creditors on account of prepetition debts that have been deemed allowed in the absence of objection. The Court can and does take judicial notice of those claims, and, accordingly, the Debtor's failure to allege the existence of any one of those qualifying creditors is not a basis for dismissal under Rule 12(b)(6). *Id.* (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994)).

Even without taking judicial notice of the claims register in the underlying bankruptcy case, the existence of at least one unsecured creditor can easily be inferred from the allegations of Counts VII and XIII. The amended complaint

alleges in both Counts VII and XIII that the Debtor "was insolvent on the date" of or "became insolvent as a result of" the allegedly fraudulent transfers. The Debtor also alleges under both counts that those transfers occurred over a period beginning four years prior to the bankruptcy and up to the day the bankruptcy petition was filed. Section 160/3(a) of the IUFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILCS 160/3(a). Accepting the Debtor's allegations that it was insolvent or rendered insolvent by transfers occurring up to the bankruptcy filing, the natural inference drawn is that there existed unsecured claims on the petition date at least to the extent the Debtor's liabilities exceeded its assets. *See Paloian v. Geneva Seal, Inc. (In re Canopy Fin., Inc.),* 477 B.R. 696, 708-09 (N.D. Ill. 2012) (applying such reasoning in context of 740 ILCS 160/6(a) where it was undisputed that the debtor was insolvent at all relevant times).

Notwithstanding the Debtor's utter failure to address the Defendants' argument that Counts VII and XIII must be dismissed for not alleging the existence of a creditor in whose shoes the Debtor is standing to bring the causes of action under the IUFTA, the Court finds that dismissal of Counts VII and XIII is not warranted. The case law cited by the Defendants in support of their argument is inapt. Dismissing Counts VII and XIII for failing to expressly allege the existence of an unsecured creditor at the time of filing the bankruptcy petition when a court could take judicial notice of such fact would further be as unproductive as dismissing a cause of action arising under the Bankruptcy Code for failing to expressly allege that a debtor was in bankruptcy. In any event, the

Debtor's allegations here that it was insolvent at the time of or made insolvent by the alleged fraudulent transfers are enough for the Court to draw the inference that there existed unsecured creditors at the time the bankruptcy petition was filed. Count VII against Express Scripts and Count XIII against OptumRX will therefore survive dismissal.

## IV.   Conclusion

The Defendants' Motions to Dismiss will be granted in part and denied in part. Count I against both Defendants will be dismissed because it is based on postpetition claims and transactions which the Debtor's confirmed plan plainly did not preserve for postconfirmation prosecution. Because the problems cannot be cured by amendment, the dismissal of Count I is with prejudice. The Motions to Dismiss are denied in all other respects. The proceedings will move forward on the remaining Counts VI and VII against Express Scripts and Counts XII and XIII against OptumRX.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: June 10, 2026

/s/ Mary P. Gorman

_____
UNITED STATES BANKRUPTCY JUDGE